UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DEFENDING ANIMAL RIGHTS             )
TODAY AND TOMORROW,                 )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 11-cv-00786 (ABJ)
                                    )
WASHINGTON SPORTS AND               )
ENTERTAINMENT, LP, *et al.*,        )
                                    )
            Defendants.             )
_____)

# MEMORANDUM OPINION

On March 24, 2011, the Ringling Bros. and Barnum & Bailey circus came to town. Compl. ¶ 8. On March 27, it packed up its tents and left. *Id*.

During the nights that the circus was performing at the Verizon Center in the District of Columbia, members of the organization Defending Animal Rights Today and Tomorrow ("DARTT"), the plaintiff in this action, handed out leaflets concerning Ringling's treatment of animals. Compl. ¶ 10. According to both the plaintiff and the defendants, the leafleting activity in question took place as the crowd of circus-goers exited the arena after each performance. Riley Decl. ¶ 2; Alioto Decl. ¶ 8. On at least one of the evenings, there were approximately seven protestors on hand to distribute fliers. Euler Decl. ¶ 3.

Plaintiff alleges that on March 24, Verizon Center employees directed the DARTT members to move away from their position under the overhang that shelters the Verizon Center doors "to the edge of the sidewalk," Compl. ¶ 1; Riley Decl. ¶ 2, and that on March 25, a Metropolitan Police Department officer instructed them "to move to a portion of the sidewalk

that was not underneath the overhang." Compl. ¶ 14; Euler Decl. ¶ 3.[1] DARTT states that its members "had the right to leaflet anywhere they chose on the sidewalk, provided that they were not blocking egress or ingress or incommoding passersby," Compl. ¶ 16, but they complied with the instructions to move. Compl. ¶ 14. They contend that as a result, fewer circus patrons accepted their fliers. Compl. ¶ 15; Riley Decl. ¶¶ 2-5; Euler Decl. ¶ 4.

Plaintiff has moved for a preliminary injunction on behalf of its members "to prevent the Defendants from interfering with their First Amendment right to peacefully and lawfully hand out leaflets." Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for a Preliminary Injunction ("Pl.'s Memo.") at 2. Since DARTT has alleged only that its members will be seeking to "Defend[] Animal Rights . . . Tomorrow" and not "Today," plaintiff has failed to demonstrate that it is likely to suffer irreparable harm in the absence of preliminary relief, and the motion will be denied.

The complaint presents the question of whether directing the protesters to move their leafleting activity from directly outside the arena doors to other points on the F Street sidewalk was an unconstitutional infringement of their First Amendment rights, Compl. ¶ 2, or whether it was reasonable restriction of the time, place, and manner in which they conducted one aspect of their lawful activity. It also raises the questions, among others, of whether the instructions to

---

[1] The photographs attached to the Declaration of Jeffrey Light, which is Exhibit 5 to Plaintiff's motion, depict the overhang. Plaintiff's counsel avers that the concrete awning is approximately 21 feet wide, Light Decl. ¶ 4, and defendant Washington Sports and Entertainment, LP ("WSE") does not challenge his measurements. *See* Defendant WSE's Opposition to Plaintiff's Motion for Preliminary Injunction ("WSE Opp'n") at 11 n.6. The photographs and map attached to the Light Declaration reflect the fact that there is a strip of sidewalk between the edge of the overhang and the curb directly in front of the arena, and that a wider swath of sidewalk extends from the sides of the overhang to the end of the block in both directions. The sidewalk leads directly to the entrance to the Metro at 7th and F Streets, N.W. *See* Ex. 2 to Light Decl.

move – if they were improper – were issued pursuant to the governmental policy or custom that is the necessary predicate for municipal liability, *see Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 694 (1978) and *Feirson v. District of Columbia,* 506 F.3d 1063, 1066 (D.C. Cir. 2007), whether defendant Washington Sports and Entertainment, LP ("WSE") is a state actor, and whether the defendants can appropriately characterize the undifferentiated portion of the F Street sidewalk that is shaded by the concrete overhang as "private property." *See* WSE Opp. at 5-7; Defendant District of Columbia's Opposition to Plaintiff's Motion for Preliminary Injunction ("DC Opp'n") § III; Riley Decl. ¶ 4; and Alioto Decl. ¶ 9. [2] But the court need not address those matters at this time. "[A] court may deny a motion for preliminary injunction and not address the remaining three factors where a plaintiff fails to establish irreparable harm." *Fraternal Order of Police, Library of Congress Labor Committee v. Library of Congress, et. al.,* 639 F. Supp. 2d 20, 24 (D.D.C. 2009) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C. Cir. 1995)).

A party seeking a preliminary injunction must establish the following: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction serves the public interest.

---

2    In its opposition, WSE does not claim ownership of the entire space under the overhang, but it takes the position that the first 8 ½ feet outside the arena doors are private property because they are part of the Verizon Center leasehold. *See* WSE Opp'n at 5. WSE characterizes this space as "clearly set back from the main façade of the building," "obviously not part of the thoroughfare sidewalk," and "not a seamless component of the urban grid." *Id.* This rhetoric seems strained in light of the photographs in the record, *see* Light Decl., and the videotaped material submitted to the court by WSE. *See* Exhibit A to Touhey Decl. The distinctions advanced by WSE may not be readily apparent to the ordinary pedestrian. But even if the legal boundary of the Verizon Center is accurately described in WSE's materials, *see* Stranix Decl., the area under the concrete canopy that the protesters were told to vacate would include both public and private space. *See* WSE Opp'n at 11 n. 6 ("[T]he width of the canopy over the public portion of the sidewalk would be approximately 14.5 feet.") In any event, the Court does not need to ascertain the legal status of the sidewalk to rule on this motion.

3

*Winter v. Natural Resources Defense Council, Inc., et. al.,* 555 U.S. 7, 129 S. Ct. 365, 374 (2008). The Supreme Court spoke clearly in *Winter*:

> Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.
>
> * * *
>
> Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Id.* at 375-76 (emphasis in original).[3]

---

[3] A number of circuits, including the D.C. Circuit, have historically evaluated the four factors utilizing what has been referred to as a "sliding scale" approach. *See Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1291 (D.C. Cir. 2009). The Court of Appeals articulated the balancing test in *CityFed Fin. Corp*: "if the arguments for one factor are particularly strong, an injunction may issue even if the argument in other areas are rather weak . . . . An injunction may be justified . . . where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F. 3d at 747. It is questionable whether this formulation has survived *Winter. See Davis,* 571 F.3d at 1297 (Kavanaugh, J., and J. Henderson concurring). In *Winter*, the Supreme Court specifically rejected the Ninth Circuit's reasoning that "when a plaintiff demonstrates a strong likelihood of prevailing on the merits, a preliminary injunction may be entered based only on a 'possibility' of irreparable harm." *Winter*, 129 S. Ct. at 375. The Court found that standard to be "too lenient." *Id.* Thus, setting the bar at a "relatively slight showing," *see CityFed Fin. Corp.,* 58 F.3d at 747, is not likely to pass muster either. But it is not necessary to settle the question of the viability of the sliding scale approach to decide this case. Even when the balancing test was the clear governing standard, the D.C. Circuit warned: "[d]espite this flexibility, we require the moving party to demonstrate at least 'some injury' . . . since '[t]he basis of injunctive relief in the federal courts has always been irreparable harm.'" *Id.* Plaintiff here has failed to demonstrate *any* injury.

Furthermore, it is not clear that plaintiff has demonstrated the "particularly strong" likelihood of success on the merits that would have warranted a relaxation of the other factors under the flexible approach. DARTT's members were not deprived of the right to leaflet entirely, and they were permitted to remain on the sidewalk on F Street where departing patrons would be walking. They not only handed out leaflets, but they expressed their views orally, amplified by a megaphone, Alioto Decl. ¶ 8, and they projected words and images onto the side of the Verizon Center itself. *See* Euler Decl. at 3 (attached photograph); Alioto Decl. ¶ 8. Plaintiff does not claim that these other expressive activities were curtailed in any way, and the record is devoid of any evidence suggesting, as plaintiff intimates, that the restrictions on the leafleting were related to the content of the fliers. *See, e.g.,* Pl.'s Memo at 18. Plaintiff disputes Sgt. Alioto's declaration that the protestors were asked to move because they were obstructing the exit, and the videotapes provided by WSE may shed some light on that issue. *See* Ex. A to Touhey Decl. But there is no dispute that the DARTT members were directed to move further from the doors at the time when seven to ten thousand patrons were trying to exit. Riley Decl. ¶ 2; Touhey Decl. ¶ 3; *see also* Pl.'s Memo. at 1 (referring to "the 20,000 seat Verizon Center").

Here, plaintiff has not demonstrated even a possibility of irreparable injury. According to the allegations in the complaint, plaintiff's members sought to distribute fliers concerning the treatment of animals by the Ringling Brothers circus while the circus was in residence at the Verizon Center. The complaint states that they were instructed to move away from the arena doors on both March 24 and 25. But DARTT did not seek the Court's intervention at that time, and this action was not filed until April 25. Plaintiff's members state that it is their present intention to distribute similar material when the circus returns, but that will not occur until March 2012. *See* Pl.'s Memo. at 7; Ortberg Decl. ¶ 9; Touhey Decl. ¶4.[4] According to their own papers, then, plaintiff's members are not at this time attempting to engage in any activity that may be constitutionally protected, and the defendants are not currently interfering with their freedom of expression in any way. Furthermore, plaintiff does not intend to attempt to engage in leafleting activity on F Street again unless and until the circus returns. Thus, plaintiff has not alleged that its members would suffer any injury – much less an irreparable one – if the Court did not order preliminary relief at this time.

> To be irreparable, an injury must be "certain and great," "actual and not theoretical," and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." The injury must also be "beyond remediation."

---

4  In light of these circumstances, defendants argue that plaintiff's claims are merely hypothetical and are therefore non-justiciable and unripe. *See* DC Opp'n § II; WSE Opp'n at 1-3. They also contend that the contingent and conjectural nature of the alleged injury means that plaintiff lacks standing to bring an injunctive action. *See* DC Opp. § II; WSE Opp. at 4. Since the motion for preliminary injunction will be denied on other grounds, and since the plaintiff has not had a full opportunity to reply to WSE's arguments under the schedule required for the resolution of a motion for preliminary injunction, the Court does not reach this issue at this time. This ruling does not preclude consideration of those issues in connection with future dispositive motions.

*Fraternal Order of Police Library of Congress Labor Comm.,* 639 F. Supp. 2d at 24 (quoting *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006)).

The sole comment offered by the plaintiff to meet its burden to show the likelihood of irreparable harm is the following:

> Given that the median delay between filing and trial in a civil case is over 40 months . . . the circus will surely come to Verizon Center again before this Court has had an opportunity to make a final decision on the merits.

Pl.'s Memo. at 18 (citations omitted). This prediction cannot fairly be characterized as an "injury" – it is simply an observation about scheduling. In its reply, plaintiff cites *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669 (D.C. Cir. 1985), for the proposition that it has presented sufficient evidence to support a finding that a future injury is "likely" to occur. But as the court stated in that case, "[t]he key word in this consideration is *irreparable* . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id.* at 674. The plaintiff's desire for a prompt resolution of the underlying issues can be accommodated with a properly tailored scheduling order.

Based upon a consideration of the motion, the oppositions, plaintiff's reply brief, the record of this case, and for the reasons set forth above, an order will issue denying the motion for preliminary injunction.

/s/
AMY BERMAN JACKSON
United States District Judge

DATE: May 24, 2011